Stanard, J.
The first enquiry in this case is, whether it was brought on prematurely, before the court below had, by the appointment of a guardian ad litem to the defendant Campbell (alleged to be under the disability of lunacy), provided for a proper defence of an incompetent defendant, or at least instituted suitable proceedings to ascertain the fact on which the necessity of such an appointment depended.
The suggestion of the disability of lunacy was not made until the lapse of years after the institution of the suit, and after a defence ostensibly full, and a decree. It was then made on an affidavit of parties, who petitioned for the appointment of a guardian ad litem, supported by other ex parle affidavits. The affidavit *250 speaks of the general incompetency of the defendant J- . . ° . , , for a' period of more than twenty years, and the supporting affidavits speak generally of a fluctuating capacity during that time, which rendered him incompetent “ t0 §‘ve Pr0Per attention to any business or as, “ at periods, mentally disqualifying him safely to transact any sort of business;” or as rendering him, though “capable generally of managing common business,” yet “inadequate to what was material and intricate;” or as betraying, “ by his peculiar actions on some occasions, that he was in a state of derangement;” or as having been seen, when, from his silence, and “ from external indications, the affiant thought his mind certainly disordered.” The affidavit of the petitioners seems to point more to the incapacity at the time of the contract, and to the consequent invalidity of the contract, than to its influence on the measures of defence in the suit; for in respect to that, there is only a general declaration of their belief that in consequence of the mental incapacity of the defendant, “mueh has been omitted in his defence, which by proper attention could be shewn,” without the specification of any omission ; and the supporting affidavits do not apply specially, nor are they directed, to the mental capacity at the time of preparing and filing the answer, or at the time of any other proceeding of the defendant in defence of the suit.
Nothing is more certain than that, on such a suggestion, the only proper subject of enquiry for the court was the then capacity or incapacity of the defendant to superintend his defence. If be was labouring under mental disability in the degree to require the superintendence of a guardian ad litem, that protection should have been given him. If he was not, the court had no power to supersede his free will and put him in wardship, and through such agency, to obtrude on him a defence on the ground of incapacity at the time the con *251 tract was made; a defence which, on the supposition # t 4 t • -i 4 _ of existing capacity, he did not think proper to urge for himself, and which he by implication disavowed. If the allegations of the petition of existing incapacity had been admitted, the court might and ought to have appointed a guardian ad litem, and (the guardian being thus introduced into the case) it would depend on what he might suggest and shew to the court, whether or not he would be permitted, on behalf of the defendant, to change the defence, by adding to it the objection to the validity of the contract on the ground of incapacity at the time it was made. He would probably not be allowed to make such change, without suggesting and shewing that the defendant laboured under the alleged incapacity at the time he made his defence. But though the allegations of the petition were immediately traversed, the court, without making the only enquiry proper to be made on the petition, that is, to ascertain the then state of the defendant’s capacity, passed by that enquiry, appointed the petitioners guardians ad litem, and directed an issue to ascertain whether the defendant was of unsound mind at the time he made the contracts and mortgage in the bill mentioned, and thereby incapacitated to make the contracts and execute the mortgage. All this was certainly most irregular. This issue was improperly directed, and the abortive attempts to get a verdict on it may be passed over without further notice. The order directing it was properly set aside, to correct the admitted error in making it, and under the well founded conviction that the preliminary question was, whether the then state of the defendant’s mind was such as to require for him, at the hands of the court, the protection of a guardian ad litem. The judge thought he had no right to enquire into the insanity of the defendant; that the statute had prescribed the manner of making such enquiry, and the organs to make it; and that the appointment of aguar *252 dian ad litem could not regularly be made, but as a con- . ° . r . , sequence oi such enquiry, and in the person oí the committee that such enquiry might provide for the lunatic.
The argument of the appellant’s counsel, and the authorities vouched in support of it, have, I think, most successfully shewn that the judge of the court below mistook the extent of his powers, and erroneously thought them more limited than they were. He may not have the power that the lord chancellor in England, as the delegate of the crown, possesses—that of issuing a commission of lunacy, nor of appointing a committee. His power in this respect need not here be enquired into or adjudicated. If a defendant in a suit in equity be lunatic, the court in which the suit may be pending has power to appoint a guardian ad litem, not only as a part of its general jurisdiction, but by express authority of the statute, 1 R. C. 212. And the authorities before referred to also ascertain, that if a party lunatic have not a committee, he should have a guardian ad litem appointed to superintend and protect his interests; that such protection is extended even to those who, from age and imbecility, are shewn to need it; and that the interposition of such protection is a matter of sound discretion of the court. When, however, the fact of lunacy or incapacity is contested, the rightful exercise of the power to appoint a guardian ad litem depends on the previous ascertainment of the fact, and the power to enquire into it is incident to that which is to be exercised on the ascertainment of it. In England, there is no statutory provision for a summary and compendious enquiry into the fact of lunacy. The enquiry there, with a view to the appointment of a committee to be charged with the care of the lunatic and his estate, is by -commission from the chancellor, acting as the delegate of the crown; and where it is suggested that a party defendant in equity, who has not been found lunatic under a commission, is a lunatic, and the enquiry *253 ¡s made for the purpose of deciding whether or no the ... ....... . . . . court should provide for this incapacity by appointing a guardian ad litem, that enquiry is referred to a master for his report on a personal examination of the party, the master being aided (if need be) in such examination, by physicians. Shelford on Lunacy 445. 1 Smith’s Ch. Pract. 186. Such enquiry is instituted under the sound discretion of the court; and sometimes, instead of appointing a guardian ad litem to act for the incapable defendant, that duty is directed to be performed by the clerk in court. In the case under consideration, such a course might have been taken, though the judge below thought he had no power to resort to it. So thinking, he (instead thereof) suspended the decree for 18 months, avowedly for the purpose of affording the defendant, and those who assumed the superintendence of his interests, an opportunity to resort to that summary enquiry which the statute here (but not in England) allows, to ascertain the existence of the suggested incapacity. The resulting question then is, ought this, under the circumstances of this case, to be regarded in the appellate court as an equivalent for the enquiry before a master, which the court in its sound discretion might have directed ?
The suggestion of incapacity was made under circumstances calculated to excite distrust and suspicion. The suit was instituted in 1829, to foreclose a mortgage executed in 1823; and the existing debts secured by the mortgage had been contracted in 1821 and 1822: and the first decree of foreclosure was rendered in May 1834, after a defence ostensibly full and active. From the time of the first contract in 1821 to the decree in May 1834, the defendant continued in the uncontrolled management of his property, and unrestrained enjoyment of his liberty, as a person of sound mind; and not an intimation is made in the progress of the suit, until after the decree, that he laboured under any inca *254 pacity requiring a guardián ad litem to conduct his defence: and during the time that elapsed from 1834 to 1837 in the abortive attempts to get a verdict on the issue that was erroneously directed, he still continued unrestrained in his personal liberty and the management of his property. If counsel prepared his answer, the proper evidence of his incapacity then would be that counsel, and yet no such evidence is offered; and if it was prepared by himself, it furnishes most persuasive if not conclusive proof of the presence of capacity. The opportunity afforded by the suspension of the decree, for enquiry into the capacity of the defendant by a personal examination, if used (as the opinion of the court below states that it was) resulted in as satisfactory a refutation of the suggestion of existing incapacity, as would have been furnished by a report of a master; and if not used, the failure to' use it is inferential proof, almost as cogent as direct, that it could not be successfully used. Under the circumstances of the case, I think the appellate court ought to consider that which was done in the court below, a full equivalent for an enquiry before a master, resulting in a negation of the suggestion: and thereafter the court below soundly exercised its discretion, in proceeding with the case as one in which the defence had been, and would continue to be, made by a competent defendant.
On the merits, I think the decree is right. (The judge proceeded to give his view of the evidence, and of the operation of the contracts, and then concluded as follows:)
It is not necessary to enquire whether the court ought to have given costs against the petitioners, on the dis-mission of their petition’. They had no rights in the matters in controversy in the original suit. They were not interested as parties, and could claim no decree therein.’ The utmost injury they can sustain by the decree, is the amount of costs decreed against them; *255 and for the correction of this error, if it be one, this court has not jurisdiction.
On the whole, I think the decree in the original suit ought to be affirmed, and the appeal of Alexander II. Campbell and George W. Campbell, from the decree for costs on the dismission of their petition, dismissed, as not within the jurisdiction of this court.
Baldwin, J. concurring, the decree was entered accordingly.